UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| KENTUCKY PEERLESS DISTILLING CO., LLC ) | |
| ) | |
| PLAINTIFF ) | Civil Action No. 3:22-CV-37-CHB |
| ) | |
| v. ) | |
| ) | |
| FETZER VINEYARDS CORPORATION ) | |
| ) | |
| DEFENDANT ) | |

Serve: <u>Via Kentucky Secretary of State</u>
Chun Lung Steven Chen (Registered Agent for Fetzer Vineyards Corporation)
12901 Old River Road
Hopland, California 95449

_____

**COMPLAINT**

Plaintiff, Kentucky Peerless Distilling Company, LLC, by counsel, and for its Complaint against Defendant, Fetzer Vineyards Corporation, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Kentucky Peerless Distilling Company, LLC ("Peerless"), is a Kentucky limited liability company with its principal office located at 120 North 10th Street, Louisville, Kentucky 40202.

2. Defendant, Fetzer Vineyards Corporation ("Fetzer"), is a corporation organized in California with its principal office located at 12901 Old River Road, Hopland, California 95449.

Service of process should be made on Fetzer pursuant to KRS 454.210 via the Kentucky Secretary of State on its registered agent for service of process, Chun Lung Steven Chen.

3. This Court has subject matter jurisdiction over the claims asserted in this action for monetary relief under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties to the action and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. This Court has personal jurisdiction over Fetzer because it availed itself of the benefit of transacting business in Kentucky vis-à-vis the Distribution Agreement (as hereinbelow defined), and the damages suffered by Peerless under the Distribution Agreement are the subject matter of this lawsuit.

5. Venue is proper in this Court under 28 U.S.C. § 1391, as it is the judicial district in which a substantial part of the events or omissions giving rise to Peerless's claims occurred. Likewise, pursuant to Section 16.6 of the Distribution Agreement, Peerless "shall have the right to seek relief, including preliminary and permanent injunctive relief, in any court of competent jurisdiction to prevent the unauthorized use or disclosure or misappropriation of any of the Intellectual Property Rights or any of [Peerless's] Confidential Information and to collect monies owed by [Fetzer] to [Peerless] hereunder."

**FACTUAL ALLEGATIONS**

I.  **Kentucky Peerless Distilling Co.**

6. Originally operating as Worsham Distilling Company, Peerless began operations in the early 1880s and its production flourished under the leadership of Henry Kraver ("Mr. Kraver").

7. Through the early 1920s, the company's federally bonded warehouses were used for whisk(e)y storage under the armed protection of the U.S. government and, during Prohibition, its product was one of the few available by prescription for medicinal use.

8. In 2013, Mr. Kraver's great-grandson, Corky Taylor, and Corky's son, Carson, revived the family namesake, organizing Kentucky Peerless Distilling Company, LLC.

9. As of 2022, Peerless offers small batch and single barrel bourbons, small batch and single barrel rye whisk(e)ys, and other spirits.

**II.     The Distribution Agreement with Fetzer.**

10. On or around February 16, 2017, Peerless entered into a distribution contract (the "Distribution Agreement") with Fetzer, a California corporation which represented to Peerless that it possessed experience in the production, marketing, and sale of alcohol beverages, having relationships with many different distributors, brokers, and sales agents around the world. (*See* Distribution Agreement, attached hereto as **Exhibit 1**, at 1.)

11. Fetzer is a wholly owned subsidiary of Concha y Toro, a Chilean corporate entity, which qualifies as an "**Affiliate**"[1] under the Distribution Agreement.

12. Fetzer further represented that it had "know-how regarding economies of scale and savings on logistics costs and effective brand development strategies." (*See id.*)

13. Under the Distribution Agreement, Peerless appointed Fetzer as its exclusive distributor for the sale and marketing of its "Products" in the "Territory," with the specific exception of retail sales at Peerless's distillery. (Distribution Agreement § 2.1.)

---

[1] The definition of "**Affiliate**" in the Distribution Agreement is laid out at Section 1.2 thereof, and is hereby incorporated herein.

3

  a. "**Products**" is defined in the Distribution Agreement as "the distilled spirits products of [Peerless] that are described in Schedule 1" of the contract. (Distribution Agreement § 1.13.) Correspondingly, Schedule 1 lists the "Products" as follows: Kentucky Peerless Bourbon Whiskey; Kentucky Peerless Rye Whiskey; "longer aged bourbon using the 'Henry Kraver' name;" and "flavored whiskey under the 'Silk Velvet' name." (Sched. 1 to Distribution Agreement.) The term "Products" will be used herein with the same definition.

  b. "**Territory**" is defined in the Distribution Agreement as "worldwide." (Distribution Agreement § 1.14.) The term "Territory" will be used herein with the same definition.

14. Fetzer agreed, as distributor, to purchase the Products "solely" from Peerless "for distribution and resale in the Territory." (Distribution Agreement § 2.2.)

15. Fetzer also agreed that "[d]uring the term of this Agreement, [Fetzer] agrees that, unless with [Peerless's] prior written consent, [Fetzer] and its Affiliates shall not own, produce, distribute, market or sell any other [whisk(e)y] brand anywhere in the Territory, except that [Fetzer] may continue to represent in a wholesale capacity any whiskey brands that it is representing as of the date of this Agreement." (Distribution Agreement § 2.3.)

16. Section 3.1 of the Distribution Agreement covers purchase orders and explains that every purchase by Fetzer of Peerless's Products "shall be made through a written purchase order to be issued and delivered" by Fetzer to Peerless, and which "shall include at least the following information: (i) the quantity and description of the Products, (ii) the requested delivery schedule, (iii) the applicable price, and (iv) any special instructions. All purchase orders . . . shall

be deemed to incorporate and be subject to the terms and conditions of this Agreement." (Distribution Agreement § 3.1.) Relatedly, "[u]pon acceptance by [Peerless], the purchase order will be binding on" Peerless and Fetzer. (Distribution Agreement § 3.2.)

17. Concerning payment of invoices, the parties agreed that the price for the Products would be invoiced to Fetzer on the date of shipment, and that "[p]ayment for each invoice for Products shipped directly to the intended wholesaler/broker will be due 30 days after the date of invoice . . . payment for Products shipped to [Fetzer's] warehouse will be due 90 days after the date of invoice." (Distribution Agreement § 3.6.)

18. Article 6 of the Distribution Agreement covers Fetzer's obligations and begins by explaining that Fetzer "shall have primary responsibility for marketing and sales of the Products in the Territory and shall conscientiously and diligently carry out this responsibility." (Distribution Agreement § 6.1.)

19. Fetzer also agreed to purchase 100% of Peerless's "output of Products intended for sale in the Territory each year as specified in the Annual Business Plan,"[2] and to pay the price of the Products it acquires, in accordance with the contract. (Distribution Agreement §§ 3.6, 6.4, 6.5.) Likewise, Fetzer agreed to provide Peerless with monthly, quarterly, and annual reports. (Distribution Agreement § 6.7.)

---

[2] "**Annual Business Plan**" is defined in the Distribution Agreement as "the joint business plan agreed upon by the Parties for each and every upcoming year throughout the term of this Agreement, including the agreed A&P Expense budget for the purpose of advertising and promoting the Products in the Territory and the marketing activities, as more fully described in Article 4." (Distribution Agreement § 1.4.) The term "**A&P Expense**" is likewise defined in Section 1.1 of the Distribution Agreement and is hereby incorporated into this Complaint.

20. Fetzer then agreed that it "shall avoid any action or omission that may impair, whether directly or indirectly, the quality of the Products or impair the value of the Products or the goodwill of the brand." (Distribution Agreement § 6.9.)

21. The parties agreed in the Distribution Agreement to an initial ten-year term (running from July 1, 2017 until June 30, 2027), unless sooner terminated in accordance with the contract for, *inter alia*, Fetzer's failure to remain in compliance with its obligations. (Distribution Agreement § 9.1.)

22. Section 10 of the Distribution Agreement governs termination, and it provides in relevant part that Peerless may terminate the contract in the event of Fetzer's breach of any of its material duties under the Distribution Agreement which it fails to cure within thirty days, among other triggering events. (Distribution Agreement § 10.1.)

23. In the event of termination of the Distribution Agreement, "[a]ll indebtedness between the Parties shall immediately become due and payable without further notice or demand, which is hereby expressly waived, and the complying Party shall be entitled to reimbursement for any reasonable attorneys' fees, costs and disbursements that it may incur in collecting or enforcing payment of such obligations." (Distribution Agreement § 11.2.)

24. Regarding miscellaneous legal issues, the Distribution Agreement explains that the contract "shall be governed by and construed in accordance with the laws of the Commonwealth of Kentucky," and further notes that, although some claims must be submitted to arbitration, Peerless "shall have the right to seek relief, including preliminary and permanent injunctive relief, in any court of competent jurisdiction to prevent the unauthorized use or disclosure or misappropriation of any of the Intellectual Property Rights or any of the Producer's

Confidential Information and to collect monies owed by the Distributor to the Producer hereunder." (Distribution Agreement § 16.6.) The prevailing party is entitled to reasonable costs and attorneys' fees. (Distribution Agreement § 16.7.)

25. The instant lawsuit is just such an action to collect monies owed by Fetzer to Peerless under the Distribution Agreement.

III. **Fetzer's failure to uphold its bargain under the Distribution Agreement, and Peerless's termination of same.**

26. On or around November 12, 2021, Peerless wrote to inform Fetzer that it was terminating the Distribution Agreement. This was due to numerous breaches by Fetzer of its material duties under the contract. This includes, but is not limited to, the fact that an Affiliate of Fetzer began to own, distribute, market, and/or sell another brand of whisk(e)y. (*See* Distribution Agreement §§ 2.3, 10.1.)

27. Peerless also pointed out Fetzer's other breaches of its material duties under the contract, including, but not limited to, Fetzer's failure to purchase 100% of Peerless's Product output pursuant to Section 6.4 of the contract; its failure to conscientiously and diligently market and sell the Products under Section 6.1 of the contract; its failure to use best efforts to promote the sale of the Products in the Territory in accordance with KRS 355.2-306 regarding exclusive distributorships; its failure to provide an Annual Business Plan for 2022; and its failure to pay for certain Products delivered to it by Peerless.

28. In the November 2021 letter, Peerless explained that, in light of Fetzer's numerous material breaches of the Distribution Agreement, it was exercising its contractual right to

7

terminate the Distribution Agreement for cause, and that such termination would have an effective date of December 31, 2021.

    **a.    Fetzer's failure to purchase 100% of Peerless's Product output intended for sale in the Territory each year.**

29. As noted above, Section 6.4 of the Distribution Agreement mandates that Fetzer "shall purchase from [Peerless] 100% of [Peerless's] output of Products intended for sale in the Territory each year as specified in the Annual Business Plan." (Distribution Agreement § 6.4.)

30. Fetzer, however, failed to comply with this contractual requirement in 2017, 2018, 2019, and 2020.

31. In 2017, Fetzer did not purchase from Peerless 100% of Peerless's output of Products intended for sale in the Territory as specified in the Annual Business Plan.

32. In 2018, Fetzer did not purchase from Peerless 100% of Peerless's output of Products intended for sale in the Territory as specified in the Annual Business Plan.

33. In 2019, Fetzer did not purchase from Peerless 100% of Peerless's output of Products intended for sale in the Territory as specified in the Annual Business Plan.

34. In 2020, Fetzer did not purchase from Peerless 100% of Peerless's output of Products intended for sale in the Territory as specified in the Annual Business Plan.

35. Fetzer's repeated failures to uphold its end of the bargain vis-à-vis not "purchas[ing] from [Peerless] 100% of [Peerless's] output of Products intended for sale in the Territory each year as specified in the Annual Business Plan," (Distribution Agreement § 6.4), constitute material breaches of the Distribution Agreement.

36. Because of these material breaches of the Distribution Agreement by Fetzer, Peerless was justified in invoking Article 10 thereof in order to terminate the contract, effective December 31, 2021.

37. Likewise, because of these material breaches of the Distribution Agreement by Fetzer, Peerless is justified in bringing the instant action to collect on monies owed under the Distribution Agreement pursuant to Section 16.6 thereof, which permits such claims to be filed in court (as opposed to, for example, in arbitration).

## COUNT I: BREACH OF CONTRACT

38. Peerless re-alleges and incorporates by reference, as if set forth fully herein, each and every allegation set forth above in this Complaint.

39. Peerless and Fetzer entered into a valid and enforceable contract vis-à-vis the Distribution Agreement.

40. Under the terms of the Distribution Agreement, Fetzer was to, among other things:

   a. serve as Peerless's exclusive distributor for the sale and marketing of Peerless's Products in the Territory, with the specific exception of retail sales at Peerless's distillery, (Distribution Agreement § 2.1);

   b. assume "primary responsibility for marketing and sales of the Products in the Territory and shall conscientiously and diligently carry out this responsibility," (Distribution Agreement § 6.1); and

      c.    purchase 100% of Peerless's "output of Products intended for sale in the Territory each year as specified in the Annual Business Plan." (Distribution Agreement § 6.4.)

41. Fetzer breached the Distribution Agreement by, *inter alia*, the following:

      a.    failing to purchase 100% of Peerless's output of Products intended for sale in the Territory for 2017;

      b.    failing to purchase 100% of Peerless's output of Products intended for sale in the Territory for 2018;

      c.    failing to purchase 100% of Peerless's output of Products intended for sale in the Territory for 2019; and

      d.    failing to purchase 100% of Peerless's output of Products intended for sale in the Territory for 2020.

42. As a direct and proximate result of Fetzer's numerous material breaches of the Distribution Agreement, Peerless has suffered and continues to suffer damages in an amount in excess of this Court's jurisdictional threshold, and it is entitled to judgment for same.

## **COUNT II: BREACH OF CONTRACT – ATTORNEYS' FEES AND COSTS**

43. Peerless re-alleges and incorporates by reference, as if set forth fully herein, each and every allegation set forth above in this Complaint.

44. Pursuant to Section 11.2 of the Distribution Agreement, "[a]ll indebtedness between the Parties shall immediately become due and payable without further notice or demand, which is hereby expressly waived, and the complying Party shall be entitled to

reimbursement for any reasonable attorneys' fees, costs and disbursements that it may incur in collecting or enforcing payment of such obligation." (Distribution Agreement § 11.2.)

45. As explained above, one of Fetzer's key contractual duties as Peerless's exclusive distributor of Product in the Territory was to "purchase from [Peerless] 100% of [Peerless's] output of Products intended for sale in the Territory each year as specified in the Annual Business Plan." (Distribution Agreement § 6.4.)

46. Nevertheless, Fetzer failed to purchase 100% of Peerless's output of Products intended for sale in the Territory in 2017, 2018, 2019, and 2020.

47. This is a significant payment shortfall, represented by the difference between the total price of the cases Fetzer *should* have purchased from Peerless in 2017, 2018, 2019, and 2020, and the total price of the cases Fetzer *actually* purchased from Peerless in each of those years.

48. Additionally, Peerless terminated the Distribution Agreement with Fetzer, effective December 31, 2021.

49. Accordingly, Section 11.2 of the Distribution Agreement has been triggered, *i.e.*, this payment shortfall is now due and owing.

50. Nevertheless, and despite Peerless informing Fetzer of its contractual obligations under the Distribution Agreement, Fetzer has not paid Peerless the monies it owes under the contract.

51. Accordingly, Peerless had no choice but to file this action to recover the monies owed to it. And because Peerless qualifies as the "complying Party" under Section 11.2, whereas Fetzer is the indebted Party, Peerless is "entitled to reimbursement for any reasonable attorneys'

fees, costs and disbursements that it may incur in collecting or enforcing payment of such obligations" vis-à-vis this lawsuit.

### COUNT III: UNJUST ENRICHMENT

52. Peerless re-alleges and incorporates by reference, as if set forth fully herein, each and every allegation set forth above in this Complaint.

53. Fetzer has benefited and been unjustly enriched to Peerless's detriment in that Fetzer has received the benefit of Peerless's agreement to use Fetzer as its exclusive distributor of the Products in the Territory without having to provide any product, service, or payment of comparable value to Peerless.

54. It would be inequitable to permit Fetzer to retain the benefit it received as a result of serving as Peerless's exclusive distributor of the Products in the Territory (and the inherent rights it obtained therefrom and the inherent restrictions on Peerless stemming therefrom).

55. This is because Fetzer misled Peerless into agreeing to use Fetzer as its exclusive distributor for 100% of the Product intended for sale in the Territory when Fetzer did not, in the end, purchase 100% of such Product and, accordingly, Peerless has not received full payment for same.

56. As a direct and proximate result of Fetzer's inequitable actions, Peerless has suffered and continues to suffer damages in an amount in excess of this Court's jurisdictional threshold, and it is entitled to judgment for same.

**WHEREFORE**, Peerless, by counsel, respectfully demands as follows:

A. Judgment against Fetzer for all claims alleged herein in an amount to be determined at trial;

B. Post-judgment interest in the amounts allowed by law;

C. An award of its attorneys' fees, expert fees, and court costs; and

D. Any and all additional relief to which Peerless may be entitled.

Respectfully submitted,

 /s/ Andrew T. Hagerman
Mark T. Hurst
Andrew T. Hagerman
Patrick M. Williams
Stoll Keenon Ogden PLLC
500 W. Jefferson Street, Suite 2000
Louisville, KY 40202
Tel:    (502) 333-6000
Mark.hurst@skofirm.com
Andrew.hagerman@skofirm.com
Patrick.williams@skofirm.com
*Counsel for Kentucky Peerless Distilling Co., LLC*