UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| KENTUCKY PEERLESS DISTILLING, LLC, ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 3:22–CV–037–CHB |
| v. ) ) | **MEMORANDUM OPINION AND ORDER** |
| FETZER VINEYARDS CORPORATION, ) ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion to Dismiss Plaintiff's Complaint Or, in the Alternative, To Stay Pending Arbitration filed by Defendant Fetzer Vineyards Corporation ("Fetzer"), [R. 30]. Plaintiff Kentucky Peerless Distilling, LLC ("Peerless") responded, [R. 35], and Fetzer replied, [R. 40]. This matter is ripe for review. For the reasons set forth herein, the Court will grant in part and deny in part Fetzer's Motion to Dismiss.

**I.   Background**

In February 2017, Fetzer and Peerless entered into a ten-year Distribution Agreement, which defined the framework in which Fetzer, a multi-national wine manufacturer and distributor, would exclusively market and sale Peerless's Products[1] in the agreed upon Territory.[2] [R. 9, pp. 3–4, 6, ¶¶ 10, 13, 21]. Under the Distribution Agreement, Peerless could terminate the contract if Fetzer breached any of its material duties (as outlined in the contract)

---

[1] "'Products' means the distilled spirits products of [Peerless] that are described in Schedule 1." [R. 35–1, p. 2, § 1.13]. Schedule 1 includes Kentucky Peerless Bourbon Whiskey, Kentucky Peerless Rye Whiskey, bourbon using the "Henry Kraver" name, and whiskey under the "Silk Velvet" name. *Id.* at 21.
[2] "'Territory' means worldwide." [R. 35–1, p. 2, § 1.14].

1

and failed to cure the breach(es) within thirty days. [R. 9, p. 6, ¶ 22; R. 35–1, pp. 10–11, § 10.1].

In addition, the Distribution Agreement contained the following arbitration provision:

> 16.6 **Dispute Resolution**.
>
> (a) In the event of any dispute between the Parties with respect to the validity, performance, interpretation, construction or breach of this Agreement (a "Dispute"), the Parties agree first to try in good faith to settle the dispute by mediation in Dallas, Texas, administered by the American Arbitration Association under its Commercial mediation Procedures.
>
> (b) If settlement is not reached within 60 days after service of a written demand for mediation, any unresolved Dispute shall be submitted to binding arbitration, to be held in Dallas, Texas, U.S.A., in accordance with the Commercial Arbitration Rules of the American Arbitration Association … The decision of the arbitrators shall be final and binding upon the Parties, and may be enforced in any court of competent jurisdiction. Notwithstanding the provisions of this Section, the Producer shall have the right to seek relief, including preliminary and permanent injunctive relief, in any court of competent jurisdiction to prevent the unauthorized use or disclosure or misappropriation of any of the Intellectual Property Right or any of the Producer's Confidential Information and to collect monies owed by the Distributor to the Producer hereunder.

[R. 35–1, pp. 17–18].

In early November 2021, Peerless informed Fetzer via letter that it was terminating the Distribution Agreement due to Fetzer breaching several of its material duties. [R. 9, p. 7, ¶ 25]. Specifically, the letter alleged that Fetzer breached the Distribution Agreement by: owning, distributing, marketing, and/or selling another brand of whiskey; failing to purchase 100% of Peerless's Product pursuant to § 6.4; failing to conscientiously and diligently market and sell the Products pursuant to § 6.1; failing to use best efforts to promote the sale of the Products in the Territory in accordance with KRS 355.2–306; failing to provide an Annual Business Plan for 2022; and failing to pay for certain Products delivered by Peerless. *Id.* ¶¶ 25–26. The termination letter also stated that the termination of the Distribution Agreement was effective as of the close of business on December 31, 2021. *Id.* ¶ 27; *see also* [R. 9–2, p. 2].

When informal negotiations between Peerless and Fetzer were unsuccessful, Fetzer invoked the Distribution Agreement's dispute resolution provision, seeking to enforce mediation prior to submitting to binding arbitration. [R. 30, p. 6; R. 30–4; R. 35–1, pp. 17–18]. When the parties could not agree as to the details of mediation (i.e., the location and mediator), Peerless decided to "proceed directly with arbitration … since 60 days ha[d] lapsed since Fetzer's written demand for mediation." [R. 30–4, p. 1]. On January 26, 2022, Peerless commenced arbitration with the American Arbitration Association ("AAA"), alleging breach of contract. [R. 30, p. 6; R. 35, p. 7]. That same day, Peerless also filed a Complaint, [R. 1], against Fetzer in this Court.

On February 3, 2022, Peerless filed an Amended Complaint, [R. 9], alleging the following counts: (1) Breach of Contract; (2) Breach of Contract — Attorneys' Fees and Costs; (3) Unjust Enrichment; (4) Tortious Interference with Prospective Business, Contractual, and Economic Relations — Damages; and (5) Tortious Interference with Prospective Business, Contractual, and Economic Relations — Injunctive Relief. [R. 9, pp. 13–20, ¶¶ 63–101]. Peerless also filed a Motion for Temporary Restraining Order ("TRO") against Fetzer, [R. 10]. In Response to the TRO, the Court held a telephonic status conference on February 4, 2022. *See* [R. 12]. During the conference, the parties expressed a possibility of reaching an agreement as to the TRO without the Court's intervention. [R. 14, p. 1]. As such, the Court encouraged the parties to reach a resolution amongst themselves and scheduled a second status conference for February 14, 2022. *Id.* at 2.

During the second status conference, the parties again expressed a possibility of reaching an agreement as to the TRO without the Court's intervention. [R. 18, p. 1]. As a result, the Court encouraged the parties to reach a resolution amongst themselves and scheduled a third status conference for February 23, 2022. *Id.* at 2; [R. 25]. However, the third status conference revealed

3

that the parties were unable to reach an agreement amongst themselves. [R. 29, p. 1–2]. Both parties requested the Court to set a briefing schedule as to the pending TRO. *Id.* at 1–2. Fetzer also informed the Court that it intended to file a Motion to Dismiss and a Motion to Compel Arbitration. *Id.* at 2. As such, the Court set a briefing schedule for both the TRO and Fetzer's anticipated Motion to Dismiss and Motion to Compel Arbitration. *Id.* On March 9, 2022, Fetzer filed its Motion to Dismiss Plaintiff's Complaint Or, In the Alternative, To Stay Pending Arbitration ("Motion to Dismiss"), [R. 30]. In accordance with the set briefing schedules, the parties filed their respective briefs for both the TRO and Motion to Dismiss. *See* [R. 30; R. 31; R. 34; R. 35; R. 40; R. 41]. After Fetzer's Motion to Dismiss, [R. 30], had been fully briefed and submitted to the Court, Peerless filed Supplemental Evidence Supporting Its Opposition to Defendant's Motion to Dismiss ("Notice"), [R. 42]. Fetzer filed objections to such submission, [R. 43].

Because the Court will grant Fetzer's Motion to Dismiss, Peerless's TRO, [R. 10], is not addressed in this opinion, but denied as moot.

**II.     Analysis**

   **A.  Arbitration Standard**

In this Circuit, "[i]n order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate," a showing that "mirrors that required to withstand summary judgment in a civil suit." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). Therefore, district courts in Kentucky evaluate a motion to compel arbitration as one for summary judgment under Fed. R. Civ. P. 56(c). *See Arnold v. Rent-A-Center, Inc.*, No. 11–18–JBC, 2011 U.S. Dist. LEXIS 51284, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011)) ("This court will treat the motion to

4

compel arbitration as one for summary judgment …"); *Weddle Enters., Inc. v. Treviicos-Soletanche, J.V.,* No. 1:14–CV–00061–JHM, 2014 U.S. Dist. LEXIS 146812, at *2 (W.D. Ky. Oct. 15, 2014) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard. Instead, courts apply the standard applicable to motions for summary judgment.") (internal citation omitted); *see also Mester v. McGraw Hill, LLC*, No. 2:21–cv–1741, 2022 U.S. Dist. LEXIS 780, *2 (S.D. Ohio Jan. 4, 2022) (citing *Great Earth Cos.*, 288 F.3d 878, 889 (6th Cir. 2002)) ("Where, as here, the parties proffer and rely upon matters outside of and not referred to in the pleadings, a motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard. Instead, the standard applicable to motions for summary judgement is applied."). Peerless, the party opposing arbitration, "must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos.*, 288 F.3d at 889 (internal quotations and citation omitted). The Court "must view all facts and inferences drawn therefrom in the light most favorable to [Peerless], and determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.*

### B. Arbitrability

The Federal Arbitration Act ("FAA") was enacted "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). In other words, the FAA recognizes that "arbitration is a matter of contract" and that contracts must be enforced "according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). The Supreme Court has recognized that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of

'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center*, 561 U.S. at 68–69). "And when parties have agreed to arbitrate 'arbitrability,' a court may not disregard their agreement — even if a particular argument for arbitration seems to be 'wholly groundless.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (quoting *Henry Schein*, 139 S. Ct. at 528–31) (emphasis in the original).

Courts usually "look to state law to interpret arbitration agreements." *Id.* To determine whether the parties have agreed to arbitrate "arbitrability," however, the Supreme Court has provided the following interpretive rule: there must be "clear and unmistakable" evidence that the parties agreed to have an arbitrator decide such issues. *Id.* (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see also Rent-A-Center*, 561 U.S. at 69 n. 1 (describing this "heightened standard"). Such rule "*reverses* the usual presumption in favor of arbitration when it comes to questions of 'arbitrability.'" *Id.* (citing *First Options*, 514 U.S. at 944–45) (emphasis added). Thus, the first question at hand is whether the Fetzer and Peerless agreed to arbitrate arbitrability.

Both Fetzer and Peerless signed the Distribution Agreement on February 16, 2017, and neither party disputes the validity of the Distribution Agreement or its arbitration provision. [R. 35–1, p. 20]; *see also* [R. 30, p. 2 ("It is undisputed that the arbitration provision in the parties' contract is valid and enforceable.")]; [R. 35, pp. 7–8 (where Peerless explains how it utilized the arbitration provision to commence an arbitration with the AAA against Fetzer)]. As a result, and as defined by Fetzer, "the only question before the Court is whether Peerless's claims fall within the scope of the arbitration agreement." [R. 30, p. 9]. In their respective briefs, the

6

bulk of both parties' arguments focus on this issue, arguing it on the merits. *See* [R. 30, pp. 9–15; R. 35, pp. 10–23; R. 40, pp. 3–9]. However, in its Motion, Fetzer clearly raised another issue — that is, the gateway issue of arbitrability: *Who* gets to decide whether Peerless's claims fall within the scope of the arbitration agreement? The Court or the arbitrator? Fetzer argues that any issues regarding the scope of the arbitration provision should be decided by the *arbitrator*, not the Court. [R. 30, p. 7; R. 40, pp. 2–3]. While Peerless fails to directly address such argument in its Response, it generally contends that it is the *Court*'s job to determine whether its claims fall within the scope of the parties' arbitration agreement, and that the record clearly illustrates that its tortious interference claim "fall[s] outside the scope of the contract's arbitration provision" and that its contract claim "fits within the Distribution Agreement's arbitration clause carveout." [R. 35, pp. 11, 17].

To determine whether Fetzer and Peerless agreed to arbitrate arbitrability, the Court must look to the Distribution Agreement's arbitration provision, which states:

> 16.6 **Dispute Resolution**.
>
> (a) *In the event of any dispute between the Parties with respect to the validity, performance, interpretation, construction or breach of this Agreement* (a "Dispute"), the Parties agree first to try in good faith to settle the dispute by mediation in Dallas, Texas, administered by the American Arbitration Association under its Commercial mediation Procedures.
>
> (b) If settlement is not reached within 60 days after service of a written demand for mediation, *any unresolved Dispute shall be submitted to binding arbitration*, to be held in Dallas, Texas, U.S.A., *in accordance with the Commercial Arbitration Rules of the American Arbitration Association* … The decision of the arbitrators shall be final and binding upon the Parties, and may be enforced in any court of competent jurisdiction. Notwithstanding the provisions of this Section, the Producer shall have the right to seek relief, including preliminary and permanent injunctive relief, in any court of competent jurisdiction to prevent the unauthorized use or disclosure or misappropriation of any of the Intellectual Property Right or any of the Producer's Confidential Information and to collect monies owed by the Distributor to the Producer hereunder.

[R. 35–1, pp. 17–18] (emphasis added).

Fetzer contends that Peerless's claims should be dismissed because "whether their agreement covers a particular controversy" is a "gateway" issue of "arbitrability" that the parties agreed would be decided by the arbitrator, and not the Court, because the parties' valid arbitration provision states that all disputes submitted to arbitration will be decided "in accordance with the Commercial Arbitration Rules of the [AAA]." *Henry Schein*, 139 S. Ct. at 529 (quoting *Rent-A-Center*, 561 U.S. at 68–69); [R. 35–1, pp. 17–18]; *see also* [R. 30, p. 7; R. 40, pp. 2–3]. In support of its argument, Fetzer cites to Sixth Circuit case law, which holds that an arbitrator is to resolve disagreements as to the scope or validity of an arbitration provision if such provision states that the parties are to arbitrate in accordance with the AAA rules. *See* [R. 30, p. 7] (quoting *W. Land. Co., LLC v. Francis*, No. 4:13–CV–00058–M, 2013 U.S. Dist. LEXIS 109456, at *5–6 (W.D. Ky. Aug. 2, 2013)) ("Multiple courts, including the Eastern and Western Districts of Kentucky, have held that where the parties agree to arbitrate according to the AAA rules, they provide a clear and unmistakable delegation of authority to the arbitrator to decide objections related to the scope or validity of the arbitration provision."); [R. 40, p. 2] (quoting *Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021)) ("By incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability."). Fetzer's arbitrability argument is well-taken.

AAA Rule 7(a) "expressly confers to the arbitrator the 'power' to decide questions of arbitrability." *Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F. Supp.3d 1257, 1264 (S.D. Ohio. Sept. 28, 2020); *see also Blanton*, 962 F.3d at 845. The rule provides that "[t]he *arbitrator* shall have *the power to rule on* his or her own *jurisdiction*, including any objections with respect to the existence, *scope*, or validity *of the arbitration agreement* or to the

8

*arbitrability* of any claim or counterclaim."[3] Hence, the Sixth Circuit has held that when parties incorporate AAA rules into their contract, the parties have clearly and unmistakably delegated the arbitrability question to the arbitrator. *See Blanton*, 962 F.3d at 844–46 (holding that the incorporation of AAA rules constitutes a clear and unmistakable agreement of the parties to arbitrate arbitrability). This is true even where, as here, the arbitration provision contains a carveout provision. As the Sixth Circuit explained:

> But to the extent that [the] arbitration agreement carves out certain claims from arbitration, it does so from the agreement in general, not from the provision that incorporates the AAA Rules. So the carveout goes to the *scope of the agreement* –– a question that the agreement otherwise delegates to the arbitrator — *not the scope of the arbitrator's authority to decide questions of "arbitrability." See id.* (describing the "placement of the carve-out" as "dispositive"); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013) (warning parties not to "conflate[] the *scope* of the arbitration clause … with the question of *who* decides arbitrability."); *Ally Align Health, Inc. v. Signature Advantage, LLC*, 574 S.W.3d 753, 757–58 (Ky. 2019) (same).

*Id.* at 848 (emphasis in the original); *see also Pinnacle*, 490 F. Supp.3d at 1264 (relying on *Blanton* to explain that a carveout provision in an arbitration provision "does *not* mean that the agreement delegates arbitrability to the arbitrator for all disputes *except* for those under the carve-out[.]") (first emphasis added).

Accordingly, by providing for "arbitration … in accordance with the Commercial Arbitration Rules of the [AAA]" in their Distribution Agreement, Peerless and Fetzer agreed that an arbitrator would determine questions of arbitrability. [R. 35–1, pp. 17–18]. As a result, the issue of whether Peerless's claims fall within the scope of the Distribution Agreement's arbitration provision (and/or its carveout clause) is an issue for the arbitrator, not the Court, to decide. *See Henry Schein*, 139 S. Ct. at 529 ("When the parties' contract

---

[3] AM. ARB. ASS'N, COMMERCIAL RULES AND MEDIATION PROCEDURES (2013), https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf (emphasis added).

delegates the arbitrability question to an arbitrator … a court possesses no power to decide the arbitrability issue … even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.").

However, although the Court concludes that arbitration is required, it cannot compel the parties to arbitrate.[4] Rather, because the Distribution Agreement specifies that arbitration is to take place in "Dallas, Texas, U.S.A," only a district court in that forum has jurisdiction to compel arbitration. [R. 35–1, p. 17]; *Mgmt. Recruiters Int'l v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997) ("Recognizing that, under Section 4 of the FAA, only a district court in the state where the parties agreed to arbitrate has jurisdiction to order arbitration[.]"); *see also Pitino v. Adidas Am., Inc.*, Civil Action No. 3:17–cv–639–DJH, 2018 U.S. Dist. LEXIS 137103, at *10 (W.D. Ky. Aug. 14, 2018) (quoting *Milan Express Co. v. Applied Underwriters Captive Risk Assur. Co.*, 590 F. App'x 482, 486 (6th Cir. 2014)) ("[B]ecause the [agreement] specifies that arbitration shall take place in Oregon, 'only a district court in that forum has jurisdiction to compel arbitration.'"). Accordingly, the Court will dismiss the Amended Complaint without prejudice.

### C. Attorneys' Fees and Costs

In its Motion, Fetzer requests the Court to award it "[the] costs, expenses, and attorneys' fees associated with bringing this motion and responding to this action." [R. 40, p. 11]. Fetzer's claim for reasonable fees and costs rests on § 16.7 of the Distribution Agreement, a provision separate from the arbitration provision and which states:

> 16.7 **Fees.** If there is any litigation or arbitration proceeding between the parties arising out of or related to this Agreement or the transactions contemplated by this Agreement, the prevailing party will be entitled to recover all reasonable costs and

---

[4] The Court notes the parties are already in arbitration, as Peerless initiated arbitration simultaneously with this lawsuit. *See* [R. 35, pp. 7–8].

10

> expenses including, without limitation, reasonable fees and expenses of attorneys, accountants and other professionals or experts.

[R. 35–1, p. 18]; *see also* [R. 30, pp. 15–16]. In response to Fetzer's request, Peerless argues that because it brought its claims in "good faith … [the] Court should use its discretion to decline to award any costs or fees to Fetzer associated with its motion to dismiss." [R. 35, p. 23]. Peerless also requests an "opportunity to submit briefs on the issue" if the Court chooses to consider Fetzer's claim for fees and costs. *Id.*

Upon review of the parties' arguments regarding fees and costs, which are undeveloped at best, the Court finds that supplemental briefing on the issue is required should Fetzer continue to pursue fees and costs. As such, the Court will deny the request without prejudice, subject to reconsideration. Any supplemental request on the issue of attorneys' fees and costs must address whether the Court has jurisdiction to award attorneys' fees and costs given its ruling on the arbitrability issue. *See supra* Section II.B. The briefs should include case citations to authority that is factually and legally analogous to the case at bar and the attorneys' fees provision in § 16.7 of the Distribution Agreement. Fetzer shall submit any supplemental brief within twenty-one (21) days of the entry of this Order. Peerless shall file any response within fourteen (14) days thereafter. Fetzer shall file its reply within seven (7) days of Peerless's response. At that time, the issue of attorneys' fees and costs will stand submitted to the Court.

### D. Peerless's Notice

Because the Court grants Fetzer's Motion to Dismiss, it need not consider Peerless's Notice, [R. 42]. Nonetheless, the Court would be remiss to not address the *manner* in which Peerless filed it.

The Court agrees with Fetzer that Peerless's Notice is an "unauthorized sur-reply." [R. 43, pp. 1–2]. In its Notice, Peerless presents a new theory of liability (i.e., monies owed under Invoice #690), which it failed to even hint at, let alone allege, in its Amended Complaint. *See* [R. 9]. Peerless argues that the claim relating to Invoice #690 was sufficiently included in its stated breach of contract claim. [R. 42, p. 2 n. 1]. The Court is unconvinced. In fact, the portion of the Amended Complaint that Peerless directs the Court to in support of its assertion clearly illustrates that Peerless was *only* seeking monies owed due to Fetzer's alleged "fail[ure] to purchase 100% of Peerless's output of Products intended for sale in the Territory [from 2017 to 2020]" in violation of § 6.4 of the Distribution Agreement. *See id*.; [R. 9, p. 14, ¶ 66(a)–9(d); R. 35–1, p. 6, § 6.4]. Now, in its Notice, Peerless is seeking monies owed under an entirely different section of the Distribution Agreement for reasons not alleged in its Amended Complaint — Fetzer's alleged failure to pay shared expenses. *See* [R. 42, p. 1 ("Invoice #690 … stems from Fetzer's portion of shared expenses arising under the Distribution Agreement. Fetzer was required, for example, to pay 50% of the 'A&P Budget,' as defined in § 1.1 of the Distribution Agreement.")].

The only proper way for Peerless to have presented this new claim to the Court would have been through a motion to file a second amended complaint. *See Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007) ("A Rule 15(a) motion for leave to amend the complaint … is the appropriate mechanism through which a party may assert additional claims of relief."); *see also VanRiper v. Local 14, Int'l Union UAW*, No. 3:13–cv–2012, 2015 U.S. Dist. LEXIS 46, at *23 (N.D. Ohio Jan. 2, 2015) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)) ("It is well-established that a party should not raise new arguments in a reply brief."). Peerless has not filed such motion with the Court. In its Notice, Peerless seemingly requests that

if the Court "determines that the claim relating to the Invoice is not sufficiently encompassed by the Amended Verified Complaint," as the Court has done, then the Court should allow Peerless to amend its Amended Complaint under Rule 15(a) because "justice so requires." [R. 42, p. 2 n. 1].

Under Federal Rule of Civil Procedure 15(a)(2), a court should grant leave to amend when justice so requires. *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017). However, a "party seeking leave to amend must file a motion stating its grounds for amending the complaint with particularity." *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 647 (N.D. Ohio 2014) (*citing Evans v. Pearson Enters..*, 434 F.3d 839, 853 (6th Cir. 2010)). "A bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Beydoun*, 871 F.3d at 469 (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004)).

Here, Peerless has not filed a motion seeking leave to amend or even provided the Court with any reason as to why "justice so requires" the amendment of its Amended Complaint. Instead, Peerless's informal request for an amendment merely consists of a statement of Rule 15(a). *See* [R. 42, p. 2 n. 1]. "Absent a proper motion and any reasons as to why [the Court] should grant leave to amend," the Court declines Peerless's request. *Howse v. Owens-Illinois, Inc.*, 86 F. Supp.3d 738, 744 (N.D. Ohio Nov. 17, 2014). Accordingly, even if the Court declined to grant Fetzer's Motion to Dismiss, the Court would still not consider Peerless's Notice.[5]

### III. Conclusion

---

[5] The Court would also decline to consider Peerless's Notice, [R. 42], because the issue of monies owed under Invoice #690 is moot, as, upon receipt of the Notice, Fetzer "immediately initiated payment of [Invoice #690]." [R. 43, pp. 3–4].

13

For the reasons stated above, the Court will grant in part and deny in part Fetzer's Motion to Dismiss Plaintiff's Complaint Or, in the Alternative, To Stay Pending Arbitration, [R. 30]. Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The Motion to Dismiss Plaintiff's Complaint Or, in the Alternative, To Stay Pending Arbitration filed by Defendant Fetzer Vineyards Corporation [R. 30] is **GRANTED in part and DENIED in part**:

    a. The Motion to Dismiss is **GRANTED** as to Fetzer's request to dismiss the Amended Complaint.

    b. The Motion to Dismiss is **DENIED** without prejudice as to the request for attorneys' fees and costs, subject to reconsideration upon the following briefing schedule:

        i. Fetzer shall submit any supplemental brief within twenty-one (21) days of the entry of this Order.

        ii. Peerless shall file any response within fourteen (14) days thereafter.

        iii. Fetzer shall file its reply within seven (7) days of Peerless's response.

2. Plaintiff Kentucky Peerless Distilling, LLC's Complaint is **DISMISSED** and **STRICKEN** from the Court's **ACTIVE DOCKET**.

3. Plaintiff Kentucky Peerless Distilling, LLC's pending Temporary Restraining Order [R. 10] is **DENIED** as moot.

This the 19th day of April, 2022.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF KENTUCKY