UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| KENTUCKY PEERLESS DISTILLING CO., | ) ) ) | Civil Action No. 3:22-CV-037-CHB |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER ADOPTING IN PART MAGISTRATE JUDGE'S RECOMMENDATION AND DENYING MOTION FOR ATTORNEYS' FEES** |
| FETZER VINEYARDS CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Report and Recommendation ("R&R") of United States Magistrate Judge Regina S. Edwards. [R. 58]. The R&R addresses Defendant Fetzer Vineyards Corporation's Motion for Attorneys' Fees. [R. 46]. Plaintiff Kentucky Peerless Distilling Co, LLC responded [R. 55], and Fetzer replied [R. 56]. In her R&R, Magistrate Judge Edwards recommended that this Court deny Fetzer's Motion because neither statutory nor contractual grounds support an award of fees. [R. 58, p. 6]. Fetzer filed timely objections [R. 59], and Peerless responded [R. 60]. The matter is now ripe for consideration. For the reasons set forth below, the Court will adopt in part and reject in part Magistrate Judge Edwards' R&R. Having determined that the Court does not have jurisdiction to award fees under the parties' Distribution Agreement, and finding that fee sanctions under 28 U.S.C. § 1927 would not be appropriate here, the Court will deny Fetzer's Motion for Attorneys' Fees.

## I.    BACKGROUND

In February 2017, Fetzer and Peerless entered into a ten-year Distribution Agreement, which defined the framework in which Fetzer, a multi-national wine manufacturer and distributor,

would exclusively market and sell Peerless's Products[1] in the agreed upon Territory.[2] [R. 9, pp. 3–4, 6, ¶¶ 10, 13, 21]. Under the Distribution Agreement, Peerless could terminate the contract if Fetzer breached any of its material duties (as outlined in the contract) and failed to cure the breach(es) within thirty days. [R. 9, p. 6, ¶ 22; R. 35-1, pp. 10–11, § 10.1]. In addition, the Distribution Agreement contained the following arbitration provision:

16.6 **Dispute Resolution**.

(a) In the event of any dispute between the Parties with respect to the validity, performance, interpretation, construction or breach of this Agreement (a "Dispute"), the Parties agree first to try in good faith to settle the dispute by mediation in Dallas, Texas, administered by the American Arbitration Association under its Commercial mediation Procedures.

(b) If settlement is not reached within 60 days after service of a written demand for mediation, any unresolved Dispute shall be submitted to binding arbitration, to be held in Dallas, Texas, U.S.A., in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . The decision of the arbitrators shall be final and binding upon the Parties, and may be enforced in any court of competent jurisdiction. Notwithstanding the provisions of this Section, the Producer shall have the right to seek relief, including preliminary and permanent injunctive relief, in any court of competent jurisdiction to prevent the unauthorized use or disclosure or misappropriation of any of the Intellectual Property Right or any of the Producer's Confidential Information and to collect monies owed by the Distributor to the Producer hereunder.

[R. 35-1, pp. 17–18]. The Distribution Agreement also contained the following relevant fee provision:

16.7 **Fees.**

If there is any litigation or arbitration proceeding between the parties arising out of or related to this Agreement or the transactions contemplated by this Agreement, the prevailing party will be entitled to recover all reasonable costs and expenses including, without limitation, reasonable fees and expenses of attorneys, accountants and other professionals or experts.

---

[1] "'Products' means the distilled spirits products of [Peerless] that are described in Schedule 1." [R. 35-1, p. 2, § 1.13]. Schedule 1 includes Kentucky Peerless Bourbon Whiskey, Kentucky Peerless Rye Whiskey, bourbon using the "Henry Kraver" name, and whiskey under the "Silk Velvet" name. *Id.* at 21.
[2] "'Territory' means worldwide." *Id.* at § 1.14.

2

*Id.* at 18.

In early November 2021, Peerless informed Fetzer via letter that it was terminating the Distribution Agreement due to Fetzer allegedly breaching several of its material duties. [R. 9, p. 7, ¶ 25]. When informal negotiations between Peerless and Fetzer were unsuccessful, Fetzer invoked the Distribution Agreement's dispute resolution provision, seeking to enforce mediation prior to submitting to binding arbitration. [R. 30, p. 6; R. 30-4; R. 35-1, pp. 17–18]. When the parties could not agree as to the details of mediation (i.e., the location and mediator), Peerless decided to "proceed directly with arbitration . . . since 60 days ha[d] lapsed since Fetzer's written demand for mediation." [R. 30-4, p. 1]. On January 26, 2022, Peerless commenced arbitration with the American Arbitration Association ("AAA"), alleging breach of contract. [R. 30, p. 6; R. 35, p. 7]. The same day, Peerless also filed a Complaint against Fetzer in this Court. [R. 1].

On February 3, 2022, Peerless filed an Amended Complaint, [R. 9], alleging the following counts: (1) Breach of Contract; (2) Breach of Contract — Attorneys' Fees and Costs; (3) Unjust Enrichment; (4) Tortious Interference with Prospective Business, Contractual, and Economic Relations — Damages; and (5) Tortious Interference with Prospective Business, Contractual, and Economic Relations — Injunctive Relief. [R. 9, pp. 13–20, ¶¶ 63–101]. Peerless also filed a Motion for Temporary Restraining Order ("TRO") against Fetzer. [R. 10]. On March 9, 2022, Fetzer filed its Motion to Dismiss Plaintiff's Complaint Or, In the Alternative, To Stay Pending Arbitration. [R. 30]. In accordance with briefing schedules set by the Court, the parties filed their respective briefs for both the TRO and Motion to Dismiss. *See* [R. 30; R. 31; R. 34; R. 35; R. 40; R. 41]. After Fetzer's Motion to Dismiss [R. 30] had been fully briefed and submitted to the Court, Peerless filed Supplemental Evidence Supporting Its Opposition to Defendant's Motion to Dismiss. [R. 42]. Fetzer filed objections to such submission. [R. 43].

3

The Court ultimately granted Fetzer's Motion to Dismiss without prejudice because "the issue of whether Peerless's claims fall within the scope of the Distribution Agreement's arbitration provision (and/or its carveout clause) is an issue for the arbitrator, not the Court, to decide." [R. 44, p. 9]. Because the Court granted Fetzer's Motion to Dismiss, it denied Peerless's Motion for TRO as moot. *Id.* at 4. The Court then directed the parties to submit additional briefing on the topic of fees. *Id.* at 11.

In its supplemental brief, Fetzer argued Peerless must pay its attorneys' fees (1) pursuant to the Distribution Agreement, which expressly provides for the recovery of costs to the "prevailing party" of "any litigation" regarding its enforcement; and (2) pursuant to 28 U.S.C. § 1927, which empowers a court to award attorneys' fees when a party incurs additional expenses due to an attorney's misconduct. [R. 46, pp. 9, 12]. Fetzer requested a total of $433,257.28 in fees and costs but sought to reserve the right to pursue additional fees as needed to finalize the instant action. [R. 56, p. 15].

In response, Peerless first argued that this Court lacks jurisdiction to award fees. [R. 55, p. 12]. Next, Peerless suggested that, because its complaint was dismissed without prejudice and with leave to refile, Fetzer is not a "prevailing party" under the Distribution Agreement. *Id.* at 14. Peerless also positioned that relevant case law does not support Fetzer's claims for fees. *Id.* at 16. Finally, Peerless disputes that its claims were "vexatious" and brought in "bad faith." *Id.* at 18.

Magistrate Judge Edwards determined, first, that "[b]ecause the Court did not conclude in its April 19, 2022 Order that federal court was an inappropriate venue for the issues raised in the Complaint, the Court cannot now consider the Complaint to be unreasonable or vexatious." [R. 58, p. 4]. Magistrate Judge Edwards likewise found that "[b]ecause the claims Plaintiff asserted continue to be pursued through arbitration, the Court finds that neither party has yet to 'prevail'

4

under the terms of the distribution agreement." *Id.* at 6. Finding "neither statutory nor contractual grounds support [Fetzer's] motion for attorneys' fees," Magistrate Judge Edwards recommended that the motion be denied. *Id.* at 6.

Fetzer filed timely objections to Magistrate Judge Edwards' R&R. [R. 59]. Fetzer contends, first, that Magistrate Judge Edwards erred in her determination that Fetzer is not a prevailing party entitled to recover fees under the Distribution Agreement. *Id.* at 9. Fetzer also submits that Magistrate Judge Edwards erred in "failing to consider the totality of Peerless's conduct throughout this case" to justify an award of fees under 28 U.S.C. § 1927 or through the Court's inherent power to sanction bad faith litigation practices. *Id.* at 13. Peerless responded to Fetzer's Objections, noting that Fetzer "essentially re-argu[es] the same meritless points from its Fees Motion" and arguing that Magistrate Judge Edwards' R&R should be adopted. [R. 60, p. 2].

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(b)(2), a petitioner has fourteen days after service to register any objections to the Magistrate Judge's report and recommendation ("R&R") or else waive his rights to appeal. When no objections are made, this Court is not required to "review … a magistrate's factual or legal conclusions, under a *de novo* or any other standard[.]" *Thomas v. Arn*, 474 U.S. 140, 151 (1985). Parties who fail to object to a magistrate judge's R&R are also barred from appealing a district court's order adopting that R&R. *United States v. White*, 874 F.3d 490, 495 (6th Cir. 2017); *see also United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).

For properly made objections, non-dispositive matters are reviewed under a "limited" standard of review: the district court "must . . . modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993); Fed. R. Civ. P. 72(a). Dispositive matters, however, are reviewed *de novo* if a party makes

proper objections. Fed. R. Civ. P. 72(b)(3). In order to receive *de novo* review by this Court, any objection to the recommended disposition must specific. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (quoting *Smith v. Chater*, 121 F.3d 709, 1997 WL 415309, at *2 (6th Cir. 1997)). A general objection that fails to identify specific factual or legal issues from the recommendation, however, is not permitted, since it duplicates the magistrate judge's efforts and wastes judicial economy. *Howard v. Sec'y of HHS*, 932 F.2d 505, 509 (6th Cir. 1991).

## III.   ANALYSIS

### A.  Contractual Entitlement to Fees

In its April 19, 2022 order, the Court explicitly stated that "[a]ny supplemental request on the issue of attorneys' fees and costs must address whether the Court has jurisdiction to award attorneys' fees and costs given its ruling on the arbitrability issue." [R. 44, p. 11]. The Court therefore begins by assessing the Court's jurisdiction to award fees pursuant to the parties' Distribution Agreement, which Magistrate Judge Edwards' R&R does not address.

In response to Fetzer's Motion for Attorneys' Fees, Peerless submits that "the arbitrability of Fetzer's claim for fees and costs is itself a gateway issue for [an arbitrator] to decide, which has undisputedly not occurred." [R. 55, p. 12]. Put differently, according to Peerless, because the Distribution Agreement provides that an arbitrator should consider "any dispute" in the first instance, the Court does not have jurisdiction to consider Fetzer's request for fees. Because the Court has already determined that the threshold issue of arbitrability of the parties' disputes must be decided by an arbitrator, the Court agrees with Peerless that it presently lacks jurisdiction to determine Fetzer's entitlement to attorneys' fees.

The parties' Distribution Agreement is governed by Kentucky law. *See* [R. 35-1, § 16.5]. A "fundamental principle[] of contract interpretation" is that "review must begin with an examination of the plain language of the instrument." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016). "'In the absence of ambiguity, a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Wehr Constructors, Inc. v. Assurance Company of America*, 384 S.W.3d 680, 687 (Ky. 2012) (quoting *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)). Here, the Court finds that the plain language of the Distribution Agreement confers jurisdiction upon an arbitrator to resolve "any dispute between the Parties with respect to the validity, performance, interpretation, construction or breach" that remain after good faith mediation attempts fail. [R. 35-1, pp. 17–18]. It plainly confers jurisdiction upon this Court for the limited purpose of providing "preliminary and permanent injunctive relief . . . to prevent the unauthorized use or disclosure or misappropriation of any of the Intellectual Property Right or any of the Producer's Confidential Information and to collect monies owed," and to "enforce" an arbitrator's "final and binding" decision. *Id.*

In *Bay Shore Power Co. v. Oxbow Energy Sols., LLC*, the Sixth Circuit considered a district court's jurisdiction to award fees where "the parties consented to binding arbitration and indicated that '[a]ny decision rendered by the arbitrators pursuant to any arbitration shall be final and binding upon the parties hereto.'" 969 F.3d 660, 664 (6th Cir. 2020). The parties in *Oxbow* had a similar long-term supply contract in place as here, and after Oxbow breached the agreement, Bay Shore initiated arbitration as previously agreed to. Specifically, the parties had agreed to resolve any disputes that might arise according to specified "Dispute Resolution Procedures," which provided

7

that if informal negotiations between the parties and mediation attempts fail, then any dispute shall be settled by binding arbitration. *Id.* at 661–62. The parties, however, specifically carved out attorneys' fees from the list of arbitrable issues, agreeing instead that a "court of competent jurisdiction" would have jurisdiction to award fees. *Id.* at 662. Consequently, after an arbitration panel declined to award fees to Bay Shore because it determined the parties' supply contract "denies it the jurisdiction to award attorneys' fees," Bay Shore filed an "Application to Confirm Arbitration Award and to Award Attorneys' Fees" in federal district court. *Id.* at 662. When the district court declined to award fees, Bay Shore appealed. *Id.* at 663.

On appeal, the Sixth Circuit first addressed which venue—the arbitration panel or the district court—had jurisdiction to consider awarding attorneys' fees. *Id.* at 664. The Court observed that "[t]he Supreme Court has held that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., does not provide federal courts with an independent basis for subject matter jurisdiction." *Id.* (citing *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008)). The Court continued:

> For cases within a federal court's jurisdiction, section 9 of the FAA permits parties to apply to a court "for an order confirming" an arbitration award. 9 U.S.C. § 9. Aside from narrow grounds allowing a court to modify, vacate, or correct an award that are not relevant here, *id.* §§ 10–11, courts can do no more than confirm or deny confirmation of the award. "[A]n action to confirm the award should be a summary proceeding, not a proceeding in which the defendant seeks affirmative relief." *Occidental Chem. Corp. v. Int'l Chem. Workers Union*, 853 F.2d 1310, 1317 (6th Cir. 1988) (quoting *Prof'l Adm'rs Ltd. v. Kopper-Glo Fuel, Inc.*, 819 F.2d 639, 642 (6th Cir. 1987)). . . . As we have recently reaffirmed, it is a "central tenet of the FAA" that "arbitration pursuant to the statute is 'a matter of consent, not coercion.'" *Taylor v. Pilot Corp.*, 955 F.3d 572, 577 (6th Cir. 2020) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 [] (1989)).

*Id.*

The Court then determined, "[i]t is clear that the parties consented to binding arbitration" since their supply contract indicated that "[a]ny decision rendered by the arbitrators pursuant to

any arbitration shall be final and binding upon the parties hereto." *Id.* However, because the parties specifically excluded the issue of attorneys' fees from the list of those arbitrable, the Sixth Circuit found that the arbitration panel's "'final and binding' decision correctly recognized that the [supply contract] provides for a court to decide whether the parties intended for the prevailing party to recover its fees through a legal action." *Id.* at 665.

The Sixth Circuit's holding in *Oxbow* is instructive for two reasons. First, it indicates that where parties plainly consent to binding arbitration, but the issue of fees (or any issue) is not expressly designated as an arbitrable or non-arbitrable one by the parties' agreement, that threshold issue (here, the arbitrability of fees) should be determined by an arbitrator. Put simply, the terms of the parties' agreement control, because "arbitration . . . is a matter of consent, not coercion." *Taylor*, 955 F.3d at 577 (internal citation and quotation marks omitted). Second, *Oxbow* dictates that the Court's jurisdiction to award, as opposed to simply enforce, fees is dependent on interpretation of the specific language of the parties' agreement and the issues they consented to arbitrate. In other words, it "underscores [when a] case is about arbitrability—that is, to what extent the parties delegated dispute resolution to an arbitrator." *Id.* at 664.

In *Oxbow*, the Court of Appeals determined the district court had jurisdiction to consider an award of attorneys' fees because the parties' agreement explicitly allowed a federal district court to make a "final determination" on that issue. Here, in contrast, the parties explicitly agreed to submit "any remaining Dispute" following mediation to arbitration, that "[t]he decision of the arbitrators shall be final and binding upon the Parties, and *may be enforced* in any court of competent jurisdiction," and that the prevailing party in arbitration or litigation would be entitled to recover fees. [R. 35-1, pp. 17–18] (emphasis added). The plain language of the parties' Distribution Agreement does not confer jurisdiction upon this Court to consider an award of fees

in the first instance. In fact, where the Distribution Agreement does unambiguously confer jurisdiction upon this Court—to provide injunctive relief to "prevent the unauthorized use or disclosure or misappropriation of any of the Intellectual Property Right or any of the Producer's Confidential Information and to collect monies owed by the Distributor to the Producer hereunder"—the carveout clause is silent on the issue of fees. [R. 35-1, pp. 17–18]. For that reason, an arbitrator must first determine if the parties' dispute concerning fees is arbitrable. If so, the Court may only enforce any award issued by the arbitrator.

The Sixth Circuit's decision in *Crossville Medical Oncology, P.C. v. Glenwood Systems, LLC*, 610 F. App'x 464 (6th Cir. 2015), likewise supports this conclusion. There, the Court affirmed the district court's decision that it did not have the authority to award attorneys' fees in a post-arbitration proceeding to confirm an arbitration award because the parties "agreed to submit [their] entire dispute to arbitration." *Id.* at 470. The parties in *Crossville* agreed to the following arbitration and fee provision:

> Any dispute arising out of or in connection with this Agreement, if not otherwise resolved, shall be determined by arbitration in New Haven County, Connecticut, in accordance with the Rules of American Arbitration Association and it is the express desire of the parties that the prevailing party be awarded costs and attorneys' fees and the award be entered as a judgment in any jurisdiction in which the non-prevailing party does business.

*Id.* at 468. Considering this language, the Sixth Circuit determined "[t]he Agreement here only authorizes an arbitrator to award attorneys' fees and costs during arbitration, and authorizes the district court to enter the award as a judgment.'" *Id.* at 468. When deciding *Oxbow*, the Sixth Circuit revisited its prior decision in *Crossville* and recognized the jurisdictional distinction created by specific language used by the parties in each agreement. *See Oxbow*, 969 F.3d at 665 ("Unlike the [contract] at issue here, the contract in *Crossville* had no limiting language with respect to the arbitration panel's jurisdiction[.]").

10

Here, as in *Crossville*, the parties' Distribution Agreement contains no limiting language with respect to the arbitration panel's jurisdiction. In fact, it expressly confers jurisdiction to the arbitration panel to resolve "any unresolved Dispute" after good faith attempts at mediation fail. *See* [R. 35-1, p. 17]. This necessarily includes the arbitrability of fees. As the Court previously determined, the "scope of the Distribution Agreement's arbitration provision (and/or its carveout clause)," including any fee award, "is an issue for the arbitrator, not the Court, to decide." [R. 44, p. 9]. An arbitrator must first determine whether the issue of fees is arbitrable and, if so, whether fees are appropriate for any "prevailing party" as contemplated by the parties' Distribution Agreement.[3]

Lastly on this point, the Sixth Circuit looked to the Fifth Circuit's decision in *Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578 (5th Cir. 1986), in reaching its decisions in both *Oxbow* and *Crossville*. In *Schlobohm*, the Fifth Circuit found that "the only issue submitted to the arbitrators was the fair market value of [a] franchise," 806 F.2d at 581, but recognized that, "[i]f, as is often the case, the arbitration agreement had provided that 'any dispute arising from the contract' would be submitted to arbitration, a strong case could be made that any award of attorney's fees, interest, and costs was necessarily submitted to the arbitrators and a district court that made such an award would be impermissibly modifying the arbitrators' decision," *id.* However, because the agreement in *Schlobohm* did not contain that language, "the district court was free to consider whether an award of attorney's fees, interest, and costs was appropriate and that such an award would not impermissibly modify the arbitrators' decision." *Id.* The Fifth Circuit's decision in *Schlobohm* further convinces the Court that it lacks jurisdiction to consider a

---

[3] The Court will also note that, although *Crossville* and *Oxbow* dealt with post-arbitration enforcement of attorneys' fees, the reasoning nevertheless applies here. "If the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

fee award in this case. As stated, the parties agreed to submit "any unresolved Dispute" to an arbitrator, [R. 35-1, p. 17], which makes "a strong case . . . that any award of attorney's fees, interest, and costs was necessarily submitted to the arbitrators." *Schlobohm*, 806 F.2d at 578.

Fetzer cites to several cases purportedly supporting the Court's jurisdiction to award fees here "on the basis of a contract provision even after the court dismisses the action." [R. 46, p. 7] (citing *Appraisal Mgmt. Co. III, LLC v. FNC, Inc.*, No. 1: 04 CV 1158, 2006 WL 8446790, at *1 (N.D. Ohio Feb. 27, 2006); *Miller v. Hurst*, 2022 U.S. App. LEXIS 2494 (6th Cir. Jan. 26, 2022); *Waas v. Red Ledges Land Dev.*, 2022 U.S. Dist. LEXIS 1323 (D. Utah Jan. 3, 2022); *City of Riverview v. Operating Eng'rs Local 324 Pension Fund*, 2019 U.S. Dist. LEXIS 229427 (E.D. Mich. Nov. 14, 2019)). However, none of the contracts at issue in those cases contained arbitration provisions, so they are not helpful to the Court's analysis. As discussed above, the Sixth Circuit has recognized that an express agreement to arbitrate a dispute necessarily affects the district court's subject matter jurisdiction. Here, the Court must conclude that it does not have jurisdiction to consider whether Fetzer is entitled to fees under the parties' Distribution Agreement. An arbitrator, rather, must determine if the parties' dispute concerning attorneys' fees is arbitrable and, if so, any party's entitlement so such fees.

**B. Fee Sanctions**

**i. Jurisdiction**

Fetzer also positions that "Courts have jurisdiction to award Section 1927 costs and fees even if the claims underlying the action, or the issue of arbitrability, are subject to arbitration." [R. 46, p. 11] (citing *Bedoy v. NBCUniversal Media, LLC*, 2021 U.S. Dist. LEXIS 4555, at *4 (D. Colo. Jan. 11, 2021) (granting § 1927 fees after granting the defendant's motion to compel); *Parrott*, 2006 U.S. Dist. LEXIS 97339, at *6 (granting § 1927 fees after holding that the plaintiff's

12

claims were subject to arbitration); *GRiD Sys. Corp. v. John Fluke Mfg. Co.*, 1992 U.S. Dist. LEXIS 21925, at \*12–13 (N.D. Cal. Dec. 1, 1992) (dismissing a plaintiff's claims because they were subject to arbitration and then awarding § 1927 fees)).

Fetzer is correct that the Court, through its inherent power, may award fees under 28 U.SC. § 1927 even where it otherwise lacks subject matter jurisdiction. In *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, the Sixth Circuit extended its prior holding that "even where a federal court lacked subject matter jurisdiction . . . it nonetheless ha[s] jurisdiction to impose Rule 11 sanctions for abuses of the judicial process" to apply to "sanctions imposed under 28 U.S.C. § 1927 or pursuant to a court's inherent authority." 465 F.3d 642, 645 (6th Cir. 2006). The Court of Appeals found "no material difference between the collateral character of sanctions under Rule 11 and sanctions awarded under 28 U.S.C. § 1927 or pursuant to a court's inherent authority" because "neither bears on the merits of a case, and both empower the court to command obedience to the judiciary and to deter and punish those who abuse the judicial process." *Id.* The Sixth Circuit therefore concluded that "a court's jurisdiction to issue sanctions under 28 U.S.C. § 1927 or pursuant to a court's inherent authority is ever present." *Id.*

### ii.  Merits

Magistrate Judge Edwards addressed Fetzer's arguments concerning Peerless's conduct in this case but recommended that the Court not award fee sanctions. [R. 58, p. 4]. Magistrate Judge Edwards reasoned that "[b]ecause the Court did not conclude in its April 19, 2022 Order that federal court was an inappropriate venue for the issues raised in the Complaint, the Court cannot now consider the Complaint to be unreasonable or vexatious." *Id.*

An award of sanctions under Section 1927 is highly discretionary. *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996). A district court's imposition of sanctions under its

inherent powers is reviewed for abuse of discretion. *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011); *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010). In the Sixth Circuit, Section 1927 sanctions are warranted "when an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* (internal citation and quotation marks omitted). "[T]he attorney's misconduct, while not required to have been carried out in bad faith, must amount to more than simple inadvertence or negligence that has frustrated the trial judge." *Id.* "Fees may be assessed without a finding of bad faith, at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (internal citation and quotation marks omitted).

To prevail under this exception, a court must "find (1) that the claims advanced were meritless, (2) that counsel knew or should have known this, and (3) that the motive for filing the suit was for an improper purpose such as harassment." *Metz*, 655 F.3d at 489 (citation omitted). "An unreasonable and vexatious multiplication occurs only where a party knows or reasonably should know that a claim is frivolous." *Jones v. Good Shepherd Healthcare Sols., Inc.*, 2019 U.S. Dist. LEXIS 11251, at *6 (W.D. Ky. Jan. 24, 2019). "Mere inadvertence or negligence by the attorney is insufficient." *Id.* at *7 (citing *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 531 (6th Cir. 2001)). Importantly, "the mere fact that an action is without merit does not amount to bad faith." *Metz*, 655 F.3d at 489 (citation omitted). Rather, "the court must find something

more[4] than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *Id.* Indeed, "an award of attorney fees under § 1927 is an extreme sanction and must be limited to truly egregious cases of misconduct." *Id.* (citation omitted).

Fetzer argues Magistrate Judge Edwards erred in concluding that Peerless's conduct has not been unreasonable or vexatious because she "plac[ed] singular focus on the *complaint* instead of the entirety of Peerless's conduct in this litigation." [R. 59, pp. 11–12] (emphasis in original). Fetzer urges the Court to consider the following actions by Peerless:

> (1) in spite of the distribution agreement's mandatory arbitration clause requiring the parties to arbitrate breach of contract claims, simultaneously commenced this case on the same day it commenced the arbitration alleging breach of the very same contract;
>
> (2) refused to withdraw its complaint in this action despite clear authority from this district that it could not avoid arbitration by attempting to fashion its breach of contract claim as one for "monies owed";
>
> (3) refused to withdraw its complaint after Fetzer provided dispositive authority that Peerless was required to adjudicate the arbitrability of its claims with the AAA;
>
> (4) filed an emergency TRO motion to prevent Fetzer from communicating with Fetzer's own distributors even though Fetzer had already agreed not to discuss Peerless with those distributors; and
>
> (5) refused to withdraw that TRO motion even after the emergency arbitrator in the arbitration proceedings issued a contrary ruling granting a TRO against Peerless to prevent Peerless from further interfering with Fetzer's relationships with these same distributors.

*Id.* at 12.

---

[4] The Sixth Circuit has provided examples of "something more," which include: "a finding that the plaintiff filed the suit for purposes of harassment or delay, or for other improper reasons," *Metz*, 655 F.3d at 489 (citing *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 314 (6th Cir. 1997)), "a finding that the plaintiff filed a meritless lawsuit and [withheld] material evidence in support of a claim," *id.* (citing *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 523 n. 18 (6th Cir. 2002)), and "a finding that a party was delaying or disrupting the litigation or hampering enforcement of a court order," *id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)).

Peerless addresses each of these complaints by Fetzer in turn, first pointing out that this Court "reached no conclusion on even the question of whether Peerless could bring the claims in court or arbitration," [R. 60, p. 19], meaning Peerless's filing of a complaint in this Court could not, by itself, be considered unreasonable or vexatious. As Magistrate Judge Edwards found, "[b]ecause the Court did not conclude in its April 19, 2022 Order that federal court was an inappropriate venue for the issues raised in the Complaint, the Court cannot now consider the Complaint to be unreasonable or vexatious." [R. 58, p. 4]. Second, Peerless clarifies that the "clear authority" Fetzer relied upon when requesting Peerless withdraw its claim was "an unpublished district court decision." *Id.* Peerless suggests, "if a plaintiff voluntarily dismissed its claims every time a defendant argued that the claims were meritless, there would be no more lawsuits." *Id.* The Court declines to rehash the parties' positions and dueling case law on these issues, but generally notes that Peerless's point is well taken. Refusing to voluntarily withdraw a complaint at the request of opposing counsel, even in the face of persuasive case law, is not automatically unreasonable or vexatious. Indeed, the very nature of litigation is for the Court to resolve conflicting legal issues where both sides present authority that supports their respective claims.

Lastly, addressing Fetzer's complaints concerning Peerless's motion for TRO, Peerless argues that because the merits of that motion were not decided, there is no basis for fee sanctions related thereto. *Id.* This Court dismissed Peerless's motion for TRO as moot when it dismissed its Complaint. *See* [R. 44, p. 4]. As with the issue of whether Peerless could bring its claims in this Court or through arbitration, the Court declines to rehash the parties' positions on the merits of the TRO. For the same reasons the Court cannot find that Peerless filing a Complaint in this Court, alone, was unreasonable or vexatious, the Court cannot find that seeking a TRO was so. As explained below, even if the Court had denied Peerless's request for TRO on the merits, fee

sanctions would still be inappropriate, as nothing indicates that the motion was frivolous or made for an improper purpose.

To Fetzer's point that Magistrate Judge Edwards' R&R "failed to consider the totality of Peerless's conduct throughout the case," [R. 59, p. 13], this Court is intimately familiar with the full background of this case and finds Peerless has failed to meet the high bar for an award of attorneys' fees under Section 1927. Despite Fetzer's arguments to the contrary, the Court does not find that Peerless's actions throughout this case have risen to the level of subjective bad faith, that its claims were frivolous, or that its litigation tactics were needlessly obstructive. Again, to justify an imposition of fee sanctions, the Court must find "(1) that the claims advanced were meritless, (2) that counsel knew or should have known this, and (3) that the motive for filing the suit was for an improper purpose such as harassment." *Metz*, 655 F.3d at 489 (citation omitted). Even if Fetzer had demonstrated that Peerless's claims were without merit, the Court must still find "something more" to award fees under Section 1927, such as that Peerless "filed the suit for purposes of harassment or delay," withheld material evidence in support of a meritless claim, or "was delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* (internal citations omitted). Fetzer points to no actions taken by Peerless that would warrant the extraordinary remedy of fee sanctions.

One final note, in its April 19, 2022 decision, this Court concluded that the arbitrability of the parties' disputes must be decided by an arbitrator, but that the parties could return to this venue if the arbitrator determined any issues fall outside of the Distribution Agreement. Put differently, the arbitrator may determine that some of the parties' disputes were not contemplated by contract, cannot be resolved by interpreting the Distribution Agreement, and must be decided by this Court. To sanction Peerless for bringing and defending a complaint and for moving for a TRO in this

Court might ultimately deter zealous advocacy, rather than serve the purpose of Section 1927, which is "to curb dilatory litigation practices and intentional abuses of the judicial process." *We Project, Inc. v. Relavistic, LLC*, No. 1:20-CV-2873, 2021 WL 3081366, at \*1 (N.D. Ohio July 21, 2021) (cleaned up) (internal citations omitted). Fetzer is not entitled to fees under Section 1927.

## IV.    CONCLUSION

For the reasons above, the Court lacks jurisdiction to consider whether Fetzer is entitled to recover its attorneys' fees pursuant to the parties' Distribution Agreement. The Court therefore declines to adopt the portions of the Magistrate Judge's R&R that address the merits of Fetzer's contractual entitlement to fees. In addition, while the Court maintains jurisdiction to award fees as a sanction pursuant to 28 U.S.C. § 1927, such sanctions would be inappropriate here.

Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. The Magistrate Judge's Report and Recommendation [**R. 58**] is **ADOPTED in part** and **REJECTED in part.**

2. Fetzer's Objections to the Magistrate Judge's Report and Recommendation **[R. 59]** are **OVERRULED**.

3. Fetzer's Supplemental Motion for Attorneys' Fees [**R. 46**] is **DENIED**.

This the 22nd day of February, 2023.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY